# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**TWILA HICKMON,** *pro se,*

    Plaintiff,

v.                                             Case No. 8:10-cv-1147-T-30MAP

**TECO ENERGY,**
**TAMPA ELECTRIC COMPANY,**

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Tampa Electric Company's Motion for Summary Judgment (Dkt. 36) and *pro se* Plaintiff Twila Hickmon's Response in opposition (Dkt. 46). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted in its entirety.

## BACKGROUND

In 2006, *pro se* Plaintiff Twila Hickmon began working for Defendant Tampa Electric Company ("TECO") through Strategic Staffing, a temporary staffing agency. In January 2007, TECO offered Hickmon a permanent position as a customer service professional ("CSP"). As a CSP, Hickmon was responsible for answering phones and responding to customer inquiries. Hickmon suffers from the following medical issues: bipolar disorder;

post traumatic stress disorder; major depression disorder; migraines; degenerative disk disease of the neck and back; asthma; bursitis; tendinitis; arthritis; and high blood pressure. Hickmon stated during her deposition that TECO was aware of her medical disorders when it hired her for the CSP position.

TECO has a positive discipline system in place for all of its employees. The key components of positive discipline are: positive reinforcement; problem solving techniques; coaching and counseling; oral reminder; written reminder; decision making leave; and termination.

On January 16, 2009, Hickmon received a verbal warning from her supervisor Tina Findley regarding her "unacceptable availability," and for her repeated failure to return on time from lunch and other breaks.

On February 9, 2009, Findley and Hickmon met for a side by side meeting, which is a meeting where a supervisor observes and offers counseling to a CSP while he or she is assisting a customer over the telephone. At some point prior to the meeting, Hickmon informed Findley that she was bipolar. During the meeting, Hickmon and Findley disagreed about the manner in which Hickmon handled a customer call. According to Findley, Hickmon became very argumentative and loud and in order to diffuse the situation, Findley informed Hickmon that they would have to continue their discussion at a later time. According to Hickmon, Findley was the one that "messed up" during the call and Findley "got angry" with Hickmon. (Pl. 64:17-21).

Findley reported her concerns about Hickmon's behavior to Luly Martin, TECO's Return to Work Administrator. Findley informed Martin that Hickmon was having difficulty returning to work after lunch and other breaks. She also stated that Hickmon was very emotional and was constantly complaining about the demands of her job and the stress it was causing her and the other employees. TECO decided that it was appropriate to require Hickmon to submit to a fitness for duty evaluation. The purpose of the evaluation was to determine if Hickmon was able to perform her regular work duties and responsibilities as a CSP.

On February 11, 2009, Hickmon was placed on oral reminder, the first step of TECO's positive discipline system, for failure to adhere to her work schedule and for her tardiness after lunch/breaks. Findley advised Hickmon that immediate improvement was necessary. Findley also informed Hickmon about TECO's decision to require her to submit to a fitness for duty evaluation.

On February 12, 2009, Hickmon met with Dr. Gary Wood, a licensed psychologist. Dr. Wood recommended that Hickmon be placed on short-term leave and referred her to Dr. Bala Rao, a licensed psychiatrist.

On or about February 13, 2009, Dr. Rao evaluated Hickmon and on February 15, 2009, he prepared a fitness for duty evaluation report. In that report, Dr. Rao recommended the following:

> I recommend that she be under psychiatric care seeing a psychiatrist on a regular basis to monitor and stabilize her on appropriate medications. Her pain medications may be an issue

> to be addressed by her psychiatrist and her pain management physician. She may return back to work once she has established her started her [sic] psychiatric treatment with the psychiatrist of her choice. I would also recommend on going to therapy to deal with issues of coping skills and dealing with boundary issues.

(Dkt. 45-1).

Based on Dr. Rao's recommendation, TECO placed Hickmon on short-term leave. Subsequently, Hickmon saw Dr. Fern Harman, who provided Hickmon with a doctor's note dated March 10, 2009, that confirmed Hickmon was in psychiatric treatment and receiving medication therapy. Dr. Harman stated that Hickmon was eligible to return to work and recommended that she go back on a limited schedule for the first two weeks.

On April 6, 2009, Hickmon returned to work. On April 15, 2009, Donald Ware, Hickmon's new supervisor, met with her to discuss the importance of adhering to her work schedule.

On April 21, 2009, Hickmon missed a previously scheduled performance review meeting with Ware.

On April 27, 2009, Hickmon received a written reminder, the second step in TECO's positive discipline system, regarding her failure to adhere to her work schedule.

On June 3, 2009, Hickmon kept a customer on hold for 8 minutes and 39 seconds. Following the incident, Ware discussed the impact of her actions and instructed her to take the remainder of the day off as decision making leave, the third step in TECO's positive discipline system. The next day, Hickmon received a decision making leave memorandum,

which confirmed TECO's decision and informed her that any future violations could result in the termination of her employment.

On June 11, 2009, Hickmon reported to work an hour and forty minutes late. According to Hickmon, she was late because of a doctor's appointment that TECO preapproved.

On June 17, 2009, Hickmon did not attend a scheduled team meeting and told a performance coach that she was stuck on a call and could not attend. TECO's call recording system reflected that Hickmon concluded the call prior to the meeting.

On June 18, 2009, TECO decided to terminate Hickmon's employment. According to TECO, her termination was the result of her failure to comply with the terms and conditions of her decision making leave, standards of integrity violations, and unacceptable work standards and judgment concerning the June 11, 2009 and June 17, 2009 incidents. The decision to terminate Hickmon was recommended by management and confirmed by the Employee Status Review Committee ("ESRC"), which is made up of human resource directors, who review the case to ensure the employee has been afforded due process.

Following her termination, Hickmon filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against based on her disability in violation of the Americans with Disability Act ("ADA").

On May 18, 2010, Plaintiff filed the instant action. Plaintiff's amended complaint alleges that Defendants discriminated against her based on her disability. She also claims

that Defendants failed to reasonably accommodate her disability, violated her procedural due process rights, and inflicted cruel and unusual punishment.

## **STANDARD OF REVIEW**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**A.  Hickmon's ADA Discrimination Claim**

To prevail on an ADA discrimination claim, a plaintiff must establish that (1) she had a disability, (2) she was qualified to perform her job, (3) she was subjected to an adverse employment action, and (4) her disability was a substantial or motivating factor that prompted the defendant to take the adverse employment action. *Collado v. United Parcel Serv. Co.,* 419 F.3d 1143, 1152 n. 5 (11th Cir. 2005).

After a plaintiff has shown a *prima facie* case of discrimination and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The employer "need not persuade the court that it was actually motivated by the

proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, the plaintiff must rebut each of the proffered reasons. *Chapman*, 229 F.3d at 1024-25.

As an initial point, the Court concludes that the record is devoid of any evidence that Hickmon's disabilities were a substantial or motivating factor that prompted TECO to take the adverse actions it took against her, such as the disciplinary measures it took pursuant to the positive discipline system and her ultimate termination. During her deposition, Hickmon generally denied the details of the events that led to the disciplinary measures and termination. For example, Hickmon disagreed that she was emotional with Findley on February 9, 2009, or that she ever complained to Findley about job-related stress. Hickmon also testified numerous times that Findley and Ware were out to get her or were trying to get rid of her. However, at no point does Hickmon point the Court to any <u>evidence</u> that her disabilities played a role in TECO's treatment of her. Indeed, Hickmon seems to assume that her disabilities were the motivating factor. Hickmon's assumptions, standing alone, are insufficient to establish a *prima facie* case of disability discrimination.

Also, even assuming Hickmon could establish a *prima facie* case of disability discrimination, TECO offers a number of legitimate, non-discriminatory reasons for its actions and Hickmon fails to demonstrate that any of these reasons were pretext for disability discrimination. The Court need not repeat the facts stated above regarding TECO's business reasons for disciplining Hickmon and ultimately terminating her employment. They are set forth above in chronological order and amply supported in the record.

Thus, the presumption of discrimination falls and the burden of production shifts to Hickmon to offer evidence sufficient for a reasonable jury to conclude that TECO's supposedly legitimate reasons are merely a pretext for illegal discrimination. Hickmon fails to meet this burden. Hickmon fails to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in TECO's proffered legitimate reasons. *Combs*, 106 F.3d at 1538. Indeed, Hickmon points to no evidence in the record to demonstrate pretext, other than her suspicions that she was being discriminated against because of her alleged disabilities. And Hickmon does not identify one other non-disabled employee who was treated more favorably. Hickmon's response in opposition, which is not a model of clarity and ignores the record evidence, largely focuses on disagreeing with TECO's version of the facts. The law is clear that Hickmon's own evaluation and opinion is not a sufficient basis to establish pretext. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

Accordingly, TECO is entitled to summary judgment on Hickmon's claim of disability discrimination.

B.      **Hickmon's Claim that TECO Failed to Reasonably Accommodate a Disability**

TECO is entitled to summary judgment on Hickmon's claim that TECO failed to reasonably accommodate her disabilities because Hickmon does not point to any record evidence reflecting that she identified to TECO or requested from TECO a specific accommodation, which was both reasonable and would have allowed her to perform the essential functions of her job. Hickmon vaguely refers to Dr. Harman's note, dated March 10, 2009, in which Dr. Harman recommended that Hickmon should return to work on limited hours for the first two weeks, and argues that she returned to work on a full-time schedule. But Hickmon does not address the fact that she did not return to work until April 6, 2009, approximately four weeks after Dr. Harman provided the recommendation. And pointing to a physician's note regarding light duty or part-time work, without something more, is insufficient to constitute a request for an accommodation under the ADA. *See Warren v. Volusia County, Florida*, 188 Fed. Appx. 859 (11th Cir. 2006).

Notably, the record reflects that Hickmon failed to include a failure to accommodate claim in her charge of discrimination and Hickmon informed the EEOC in the EEOC Intake Questionnaire that TECO provided her with all of her requested accommodations.

Accordingly, TECO is entitled to summary judgment on Hickmon's failure to accommodate claim.

C.      **Hickmon's Remaining Claims**

The record reflects that TECO is entitled to summary judgment on the remaining claims asserted in Hickmon's amended complaint.

Hickmon's claim under the Rehabilitation Act fails because the record is devoid of any evidence that TECO received any federal financial assistance under any program or activity. *See Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999). Morever, this claim fails for the same reasons that the disability discrimination claim under the ADA fails.

Hickmon's constitutional claims fail because the record is devoid of any evidence of state action. *See Singletary v. Haskell Co.*, 2009 WL 2604587, at *1 (M.D. Fla. Aug. 21, 2009).

Hickmon's unnumbered paragraphs in her amended complaint titled "Claims" are also unsupported in the record. Any retaliation claim fails for the same reasons that the disability discrimination claim under the ADA fails. And the record is devoid of any facts supporting a claim under the Family Medical Leave Act.

Finally, although Defendant TECO Energy did not move for summary judgment, it asserted in its answer and in a footnote in the instant motion for summary judgment that it is not a proper party to this action because it never employed Hickmon and she failed to exhaust the administrative prerequisites to file a suit against it. Hickmon does not address these issues with any clarity in her response and the record supports TECO Energy's argument. Accordingly, TECO Energy is dismissed as a party to this case.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Tampa Electric Company's Motion for Summary Judgment (Dkt. 36) is GRANTED.

2. The CLERK is directed to enter Final Summary Judgment in favor of Defendant Tampa Electric Company and against Plaintiff Twila L. Hickmon.

3. Defendant TECO Energy is dismissed from this case.

4. The CLERK is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 9, 2012.

*[Signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-1147.msj36.frm